WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

JOSE RODRIGUEZ,                    )
                                   )
            Petitioner,            )       No.   CV 10-209-TUC-DCB (BPV)
                                   )
vs.                                )
                                   )
                                   )       **REPORT AND**
CONRAD GRABER,                     )       **RECOMMENDATION**
                                   )
            Respondent.            )
_____)

        This matter arises on Petitioner's *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). (Doc. 1) Petitioner alleges that the Federal Bureau of Prisons ("BOP") denied his participation in furloughs, work release, and other community based rehabilitative programs, through application of Program Statement P5100.08's management variable "V," without notice, hearing, or an opportunity to defend against the allegations supporting the classification. (*Id*., p.4) Respondent filed a Return and Answer to Order to Show Cause why Petition for Writ of Habeas Corpus Should Not be Granted ("Answer") (Doc. 12) with Exhibits 1 and 2, (Docs 12-14) and sealed Exhibit 2, Attachment 4 (Doc. 16) attached. Respondent contests the Petition, arguing Petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process, and inmates have neither protectable liberty interests nor property interests in custodial classifications. (Answer, p. 4-5)

        Pursuant to the Rules of Practice of this Court**,** this matter was referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation. (Doc. 5)

        For the reasons discussed below, the Magistrate Judge recommends that the District Court enter an order denying the Petition.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

At the time of filing of this action, Petitioner was an inmate incarcerated at the Federal Correctional Institution (FCI) Safford, Arizona. (Answer, Ex. 1, ¶ 2) Petitioner is presently incarcerated in FCI Texarkana, a low security facility. (*See* Doc. 25) Jurisdiction over this § 2241 is still proper, however, because jurisdiction is in this District is not destroyed by a transfer of the Petitioner and the accompanying custodial change. *See Mujahid v. Daniels*, 413 F.3d  991 (9th Cir. 2005)(jurisdiction attaches on the initial filing for habeas corpus relief).

Plaintiff is currently serving a 196 month sentence, followed by 5 years of Supervised Release. (Answer, Ex. 1, ¶ 3) This sentence was imposed on January 23, 2002 in the Southern District of Texas, based on Petitioner's conviction for possession with intent to distribute in excess of 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). (Answer, Ex. 1, ¶ 3; Attachment 2)

Custody classification is a procedure whereby an inmate is assigned a level of supervision according to their criminal history and institutional behavior/adjustment. (Ex. 2, ¶ 2) The Inmate Security Designation and Custody Classification system, providing policy and procedure regarding the BOP inmate classifications  is detailed in Program Statement P5100.08 (the "Program Statement").[1] Male inmates are classified into four security levels: minimum, low, medium, and high. (Program Statement, Chapter 1, p.2) Petitioner is presently a minimum security level inmate at

---

[1] References to Chapter 6 of the Program Statement can be found at Respondent's Answer, Ex. 2, Attachment 1.  Respondent did not attach the entirety of the Program Statement to the Answer. Accordingly, for background purposes, the Court takes judicial notice of the entire Program Statement P5100.08, which can be accessed on the BOP's website at: http://www.bop.gov/policy/progstat/5100_008.pdf

1  FCI-Safford, with a greater security management variable[2] applied. (Answer, Ex. 2, ¶

2  1)

3       On October 21, 2009, during Petitioner's annual custody review, he was

4  classified as a minimum security level inmate with a management security level of low.

5  (Answer, Ex. 2, ¶ 3 and Attachment 2.)   On October 23, 2009, Petitioner's case

6  manager and unit manager requested a greater security management variable be applied

7  in Petitioner's case because Petitioner had a history of escape, and was charged with his

8  current offense while on escape status[3]. (Answer, Ex. 2, Attachment 3) At Petitioner's

9  most recent Program Review, on April 14, 2010, his recommendation for housing

10  remained at a low security level facility. (Answer, Ex. 2, Attachment 4)

11       Petitioner alleges that, much like the reclassification which occurred on October

12  23, 2009,  the BOP has previously abrogated the Custody Classification through

13  application of the Program Statement's management variable. (Petition, ¶¶ 1-2.)

14  Petitioner alleges that twice after he was classified and approved by his Unit

15  Classification Team on January 9, 2006 and February 13, 2007 for placement in a

---

[2] Management variables rely on the professional judgment of Bureau staff and are required when placement has been made and/or maintained at an institution level inconsistent with the inmate's security score which may not completely or accurately reflect the inmate's security needs. Program Statement, Ch. 2, p 4.

[3] This notation was factually incorrect, an error repeated often throughout the classification and review process. While on escape status, Petitioner was arrested on two state charges in Tennessee. Tennessee officials, unaware of his escape status, discharged Petitioner from custody, and he remained at large until his arrest on the escape charges. The current offense was committed after he was released from custody on the escape charges. (Answer, Ex. 2, Sealed Attachment 4; Doc. 1, Ex. A, p.1) David Duncan, warden at FCI Safford, has acknowledged the incorrect notation during the grievance process, but nonetheless denied his request for administrative remedy based on Petitioner's previous decision to walk away from SCP El Reno. (Answer, Ex. 1, Attachment 3, Responses dated March 26, 2009, March 11, 2008, )

facility providing community based rehabilitative programs the BOP's Designation Sentencing Computation Center ("DSCC") arbitrarily and capriciously abrogated the classification through application of the management variable. (*Id.*)

**II.    DISCUSSION**

 A.    Jurisdiction

A prisoner who wishes to challenge the manner, location, or conditions of a sentence's execution must bring a petition pursuant to § 2241 in the custodial court. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir.2000). A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian. *Brown v. United States*, 610 F.2d 672, 677 (9th Cir. 1980).

In this case, Petitioner challenges the application of a management variable to his custody classification in violation of his right to due process. The management variable prevents Petitioner from participating in community based rehabilitative programs. Petitioner is challenging the legality of the manner in which his sentence is being executed. Thus, his petition is proper under 28 U.S.C. §2241.

 B.    Exhaustion

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir.1986). The Government concedes Petitioner has exhausted his available administrative remedies. (Answer, p.3).

 C.    Mootness and Exhaustion

Though Respondent concedes that Petitioner has raised the issue and exhausted it through available administrative remedies, their own exhibits indicate that, as to Petitioner's specific claim – that after approval in 2006 and 2007 for placement in a facility providing community based rehabilitative programs, the BOP DSCC relied on management variables to abrogate the classification, without notice, hearing or providing the Petitioner an opportunity to respond – that particular claim became moot

1  after Petitioner's most recent classification. Petitioner argues, however, that "[w]ithout
2  the guaranteed protections of due process, the Bureau of Prisons abusive behavior could
3  continue indefinitely thus creating an unacceptable cycle as is demonstrated herein."
4  (See Petition, p.4) Because of the one year duration of custodial classifications, the
5  likelihood that Petitioner will be subject to similar application of the management
6  variable each year, and the exception to the mootness doctrine for cases capable of
7  repetition, yet evading review, the Magistrate Judge finds that the controversy is not
8  moot.

9      Finally, while as a prudential matter the Court requires that habeas petitioner's
10 exhaust available judicial and administrative remedies before seeking relief under §
11 2241, petitioners are not specifically required to exhaust direct appeals before filing
12 petitions for habeas corpus. *See* 28 U.S.C. § 2241. Recognizing Petitioner's diligent
13 attempts to administratively exhaust this issue each time it arises, and Respondent's
14 acknowledgment of exhaustion, the Magistrate Judge recommends that the District
15 Court exercise its judicial discretion to reach the merits of the claim. *See Brown v.*
16 *Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds*, *Reno v. Koray*,
17 515 U.S. 50, 54, 55 (1995) ("[b]ecause exhaustion is not required by statute, it is not
18 jurisdictional.").

19      D.    Merits

20           *1.    Classification of Inmates and Program Statement P5100.08*

21      Congress authorizes federal correctional institutions to develop a classification
22 system that segregates inmates based on "the nature of the offenses committed, the
23 character and mental condition of the prisoners, and such other factors as should be
24 considered in providing an individualized system of discipline, care, and treatment of
25 the persons committed to such institutions."  18 U.S.C. § 4081. The BOP classification
26 procedure is within the discretion of the Attorney General as delegated to the Director
27 of the BOP. *See* 18 U.S.C. § 4081; 28 C.F.R. § 0.96; *Moody v. Daggett*, 429 U.S. 78,
28 88 n. 9 (1976) (dicta).

1   The BOP's policy and procedures for classifying inmates are set forth in the
2   Program Statement. The intent of the Custody Classification system is to permit staff
3   to use professional judgment within specific guidelines. (Program Statement, ¶ 2,
4   Program Objective). An inmate's custody classification is determined when he enters
5   BOP custody (approximately seven months upon arrival at the institution), and is used
6   to place each inmate in the most appropriate security level institution that also meets
7   their programs needs and is consistent with the BOP's mission to protect society. (*Id.*,
8   ¶ 1; *Id.*, Ch. 6, p.1). The custody classification is re-calculated annually during the
9   inmate's institutional Program Review. (*Id.*)

10  The classification procedure involves consideration, through a numerical scoring
11  system, of a range of factors to determine the proper security and custody classification.
12  These factors include severity of the current offense, length of the current sentence,
13  criminal history, history of violence, history of escape and escape attempts, number and
14  type of detainers, involvement with drugs and alcohol, mental or psychological
15  stability, institutional adjustment, number and frequency of incident reports, and
16  personal responsibility. (*Id.*, Ch. 6, pp.2-15).

17  BOP also has the option of adding a third "score" to the classification analysis.
18  (*Id.*, Ch. 6, p. 16). When the resulting "scored security level" of an inmate does not
19  reflect the inmate's assessed security needs, a management variable can be added to the
20  inmate's classification. (*See Id.* Ch.5). A management variable overrides the inmate's
21  scored security level. (*Id.*, Ch.6, p.16). A management variable can effect placement at
22  either a higher security or lower security institution than the scored security level
23  indicates. (*Id.*, Ch.5) Application of a management variable requires review and
24  approval by the DSCC. (*Id.*, Ch. 5, p. 1). Prison staff must complete a written request
25  asking DSCC to review an inmate's file and apply a management variable. (*Id.*, Ch. 5,
26  p.1). There are various management variables; specific to this case, a "V" management
27  variable represents "Greater Security" and applies when "[t]here may be security
28  concerns which are not adequately reflected in the classification scheme." (*Id.*, Ch. 5,

- 6 -

p.5). The greater security ("V") management variable requires up to a 24 month expiration date. (*Id.*)

      E.     <u>Petitioner's Due Process Claim</u>

The Due Process Clause of the Fifth Amendment applies to prisoners. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Haines v. Kerner*, 404 U.S. 519 (1972). The Fifth Amendment prohibits the government from depriving an inmate of life, liberty, or property without due process of law. *See* U.S. CONST. AMEND. V. The Due Process Clause is designed to protect the individual against arbitrary government action. *See Wolff*, 418 U.S. at 558; *see also Wilkinson v. Austin*, 545 U.S. 209, 220-24 (2005) (Due Process Clauses prohibits government from infringing on prisoner's liberty interest without due process of law). It is well settled that in order to be entitled due process there must be some legal entitlement, right or liberty interest that is protected under state or federal law. *Meachum v. Fano*, 427 U.S. 215, 223-24 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Schroeder v. McDonald*, 55 F.3d 454, 462 (9th Cir. 1995)(citing *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). Therefore, Petitioner must establish that he had either a liberty interest or a property interest sufficient to trigger due process protection.

Petitioner alleges the BOP violated his due process rights when prison officials assigned him a management variable of greater security without notice, a hearing, and the opportunity to present a response. Petitioner seeks an order declaring BOP's use of the Program Statement, in the way it is currently being used without prior notice, hearing, or opportunity to respond, in violation of the Fifth Amendment's due process clause and unconstitutional. The Court finds the BOP is not required to provide Petitioner with any notice, hearing, or an opportunity to be heard prior to applying a management variable because Petitioner does not have a protected liberty interest in discretionary custody classifications or in eligibility determinations for rehabilitative programs.

In *Moody,* the Supreme Court noted in dicta that prisoner classification and eligibility for rehabilitative programs in the federal system are matters delegated by Congress to the "full discretion" of federal prison officials. 429 U.S. at 88 n. 9. Inmates do not have "legitimate statutory or constitutional entitlement sufficient to invoke due process" regarding their classification. *Id*. Similarly, the Supreme Court held the transfer of a state prisoner to a less favorable institution without an adequate fact-finding hearing does not in itself deprive the prisoner of liberty without due process of law. *Meachum,* 427 U.S. at 225. In *Meachum*, the Court expressed concern that finding a liberty interest in the transfer of prisoners would trigger procedural protections of due process that "would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Id*. The Court was "unwilling to go so far" as to find a liberty interest when transfers between institutions are made for a variety of reasons including institutional security or the safety and welfare of the inmate. *Id*. The Ninth Circuit also held that prisoners have no constitutional right to a particular classification status. *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir.1987) (citing *Moody*, 429 U.S. at 88 n. 9). In *Hernandez*, the prisoner brought a § 1983 action alleging state prison officials improperly classified him based on false statements in his file without giving him due process to argue against those statements. *Id*. The Ninth Circuit disagreed; holding Petitioner did not have a due process right in his classification status nor was he deprived of liberty by the presence of challenged statements in his record. *Id*.

In support of his claim, Petitioner cites a non-binding Second Circuit case, *Cardaropoli v. Norton*, 523 F.2d 990 (2nd Cir.1975). In *Cardaropoli*, the Second Circuit held a petitioner was entitled to some procedural protections of due process before the BOP could designate him as a "special offender". *Id*. at 994-995. The program statement in effect set forth eight broad categories for special offenders including non-federal prisoners, members of organized crime, protection cases, extreme custody risks, subversives, notorious individuals, persons who have threatened high

1   government officials, and any other offender who requires 'especially close
2   supervision.'" *Id.* at 993. In reaching its conclusion that some due process was required
3   before designating an inmate as a "special offender", the Second Circuit noted the
4   consequences of a "special offender" designation were significant and could include
5   delays or preclusion of social furloughs, release to half-way houses and transfers to
6   other correction institutions and a possible bar on early parole. *Id.* at 994. Significant
7   to the court was the total or partial loss of eligibility for substantial benefits normally
8   afforded every inmate. *Id.* at 995, n. 11. The court in *Cardaropoli* specifically
9   distinguished the "special offender" classification from other classifications, including
10  the security risk classification of "maximum", "medium", or "minimum", because
11  "special offender" classification cannot be mitigated or removed by reason of the
12  inmate's subsequent behavior. *Id.*

13      *Cardaropoli* is not binding on this Court and it also addresses a designation
14  "special offender" that is not at issue in this case. Unlike the "special offender"
15  designation, Petitioner's management variable classification has an expiration date.
16  Under the Program Statement, Petitioner's management variable classification expires
17  after twenty-four months and prison staff must reapply to the DSCC Administrator to
18  reevaluate the case if they seek further management variable classification. (Program
19  Statement, Ch. 5, p.1). Also different, the designation of a management variable does
20  not result in the loss of eligibility for benefits afforded to other inmates. A management
21  variable does effect where Petitioner falls in the classification system but it is not a
22  separate designation that places him outside the classification system. A management
23  variable classification is closer to the classification of "maximum", "medium", or
24  "minimum" custody identified by the Second Circuit as distinguishable from the
25  "special offender" designation. *Cardaropoli* is not binding on this Court and is also
26  distinguishable from this case.

27      In conclusion, the Magistrate Judge finds no basis for a due process claim.
28  Prisoner classification and eligibility for rehabilitative programs are matters delegated

by Congress to the discretion of federal prison officials, and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process" *Moody*, 429 U.S. at  88, n. 9. Petitioner has failed to establish that he has a protected liberty interest or property interest in discretionary custody classifications or in eligibility determinations for rehabilitative programs. Accordingly, BOP's use of the greater security management variable to classify a prisoner without prior notice, hearing, or an opportunity to respond is not in violation the Fifth Amendment's due process clause.

Respondent also addresses in the answer that "Petitioner indicates he would like the Court to order a transfer to a minimum security Federal Prison Camp so he may participate in furloughs, work release and other community based rehabilitative programs." (Answer, p.6) Respondent does not cite the basis for this request from the Petition, and the Magistrate Judge has reviewed the Petition and cannot establish the basis for this response. Nonetheless, Respondent is correct that Petitioner has no right to be housed at any particular prison, and transfers, like custodial classifications, are left to the discretion of prison officials. *See* 18 U.S.C. 4082(b); *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991); *Montanye v. Haymes*, 427 U.S. 236 (1978).

The petition should be denied.

//
//
//
//
//
//
//
//
//

**III.    RECOMMENDATION**

The Magistrate Judge recommends that the District Court enter an order DENYING the petition on the merits. (Doc. 1.)

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within fourteen (14) days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **No. CV-10-209-TUC-DCB.**

The Clerk is DIRECTED to send a copy of this Report and Recommendation to the Petitioner and the Respondent.

DATED this 6th day of May, 2011.

_____
Bernardo P. Velasco
United States Magistrate Judge